IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-03544-CMA-NRN

LENA RAMSAY, *and Jane Doe, individually and on behalf of all other similarly situated*,

    Plaintiffs,

v.

FRONTIER, INC.,

    Defendant.

---

# ORDER

---

This matter is before the Court on Plaintiffs' objections to three recommendations issued by Magistrate Judge Neureiter. Judge Neureiter recommends (1) dismissing four of Plaintiffs' five claims for relief; (2) striking Plaintiffs' class action allegations; and (3) denying Plaintiffs' Motion to Amend the Complaint. Plaintiffs ask the Court to reject Judge Neureiter's Recommendations and to either allow the claims to proceed as filed or to allow Plaintiffs to amend their Complaint. The Court affirms and adopts Judge Neureiter's recommendations for the following reasons.

## I.     BACKGROUND

This is a putative class action against Frontier, Inc. ("Frontier Airlines," "Frontier," or "Defendant"). The named Plaintiffs are two former Frontier passengers who allege that they were sexually assaulted by other passengers on Frontier flights. (Doc. # 1, ¶¶ 14-27). Plaintiffs now claim that Frontier is liable for negligently failing to prevent the

1

assaults. (Doc. # 1, ¶¶ 64-76). Plaintiffs also assert claims for intentional infliction of emotional distress, negligent infliction of emotional distress, willful and wanton conduct, and injunctive relief. (Doc. # 1, ¶¶ 77-93). Additionally, Plaintiffs purport to represent a nationwide class comprised of "[a]ll passengers who flew on Frontier flights between December 16, 2017 and the present." (Doc. # 1, ¶ 53).

Defendant moved to dismiss the Complaint and to strike Plaintiffs' class action allegations. (Docs. ## 36, 37). Defendant argued that Plaintiffs had failed to state a claim upon which relief could be granted, and that Plaintiffs had failed to establish the prerequisites for class-action certification under F.R.C.P. 23. This Court referred both Motions to Magistrate Judge Neureiter.

Judge Neureiter addressed the Motions in a written Report. (Doc. # 61). The Report recommends granting the Motion to Dismiss in part and dismissing all of Plaintiffs' claims except the claim for negligent infliction of emotional distress. (Doc. # 61, p. 62). Judge Neureiter also recommends granting the Motion to Strike on the basis that Plaintiffs failed to meet the class-certification requirements of Rule 23. (Doc. # 61, p. 62).

After the Report was issued, Plaintiffs sought to amend their Complaint. (Doc. # 65). This Court referred the Motion to Amend to Judge Neureiter, who again prepared a written Report. (Doc. # 75). The Report recommends that Plaintiffs' Motion to Amend be denied on the basis of futility.

Plaintiff now objects to Judge Neureiter's recommendations.

2

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(a)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." F.R.C.P. 72(b)(3). In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## III. ANALYSIS

As an initial matter, the Court notes that Plaintiffs do not object to all of Judge Neureiter's recommendations: Plaintiffs do not challenge the dismissal recommendations with respect to either (1) the claim for willful and wanton conduct, or (2) the claim for intentional infliction of emotional distress. The Court has reviewed Judge Neureiter's recommendations with respect to these claims, and it finds the recommendations to be well-reasoned. Therefore, the Court affirms and adopts Judge Neureiter's recommendations with respect to these two claims.

The Court also notes that Defendant does not object to Judge Neureiter's recommendation that Plaintiffs' claim for negligent infliction of emotional distress be allowed to proceed. The Court finds this recommendation to be sound, and it therefore affirms and adopts this recommendation.

The court will now address the portions of Judge Neureiter's Reports to which Plaintiffs properly objected.

A.     **DISMISSAL RECOMMENDATION**

Plaintiffs first contend that Judge Neureiter erred in recommending dismissal of the claims for negligence and injunctive relief. The Court will address each of those claims in turn.

    1.     <u>Negligence</u>

        a.     *Background*

Plaintiffs' Complaint alleges that Frontier negligently failed to prevent Plaintiffs from being sexually assaulted. Specifically, Plaintiffs allege that Frontier owes its passengers a duty "to take reasonable steps [to] prevent and deter in-flight sexual assault," (Doc. # 1, ¶ 65), and that Frontier breached that duty by failing to "implement and enforce uniform policies and procedures for the prevention, deterrence, and response to in-flight sexual assaults." (Doc. # 1, ¶ 68).

Frontier moved to dismiss Plaintiffs' negligence claim under F.R.C.P. 12(b)(6). (Doc. # 36, p. 15). Frontier argued that Plaintiffs' Complaint failed to allege that Frontier could have foreseen these assaults and that it, therefore, had no duty to prevent them. Judge Neureiter agreed.

Judge Neureiter noted that, although Frontier clearly owes its passengers a duty of care, that duty extends only to foreseeable risks.[1] (Doc. # 61, p. 20). Although

---

[1] As Judge Neureiter observed, negligence claim requires two distinct and separate foreseeability analyses. "First, foreseeability is an integral element of duty. Second, foreseeability is the touchstone of proximate cause. The former is a question of law for the court; the latter is a question of fact for the jury at trial." *Mestas v. Air & Liquid Systems Corporation*, 2019 WL 1967129 (D. Colo. Jan. 29, 2019) (citing *Westin Operator, LLC v. Groh*, 347 P.3d 606, 611 n.5 (Colo. 2015)).

Plaintiffs alleged that in-flight sexual assault is a "well-known, and growing, problem," (Doc. # 1, ¶ 2), Judge Neureiter concluded that Plaintiffs had failed to show that sexual assault was a foreseeable risk under the circumstances of this case. Therefore, Judge Neureiter concluded, Plaintiffs had failed to establish that Frontier had a duty to prevent the assaults. (Doc. # 61, p. 20).

Plaintiffs now argue that Judge Neureiter's analysis was incorrect, and that in-flight sexual assault was a foreseeable harm that Frontier had a duty to prevent. (Doc. # 66, p. 4). The Court agrees with Judge Neureiter.

  b. Analysis

Negligence is a state-law claim, but the Colorado Supreme Court has not yet addressed the question whether airlines owe a duty to prevent in-flight sexual assault. Therefore, this Court's job is to ascertain how the Colorado Supreme Court would resolve the issue. *See Pehl v. Farm Bureau Life Ins. Co., Inc.*, 397 F.3d 897, 901 (10th Cir. 2005).

Under Colorado law, there is generally no duty to protect a person from a criminal attack by a third person. *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015). Colorado negligence law generally punishes misfeasance (affirmatively causing harm to another person) rather than nonfeasance (failing to prevent harm). *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 295 (Colo. 2020). In some circumstances, however, a "special relationship" between the plaintiff and the defendant may give rise to a duty to prevent harm. *Id*. A "special relationship" is a relationship "of such a character that social policy justifies the

imposition of a duty to act." *N.M. by and through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). One such "special relationship" is the relationship between a common carrier and its passengers. *Rocky Mountain Planned Parenthood*, 467 P.3d at 295.

The parties apparently agree that Frontier is a common carrier. (*See* Doc. # 36, p. 2). Thus, Frontier has a "special relationship" with its passengers such that it owes a duty to protect them from certain types of harm by third parties. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612-13 (Colo. 2015). The question is whether these sexual assaults fall within one of the categories of harm that Frontier had a duty to prevent. The Court concludes that they do not.

The existence of a special relationship does not create a duty to protect in all circumstances. A common carrier is not required "to ward off any and every imaginable peril." *Colorado & S. Ry. Co. v. McGeorge*, 102 P. 747, 749 (Colo. 1909). Rather, "[w]hether a defendant in a particular negligence action owes a legal duty to the plaintiff . . . is a question of law to be determined by the court." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). "Courts consider a number of factors to determine whether a duty exists, including: the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor." *Id*. "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987).

6

Applying these factors, the Court agrees with Judge Neureiter that Plaintiff has failed to establish the existence of a duty in this case.

Although Plaintiffs allege that in-flight sexual assault is a "growing problem," there is nothing in the Complaint to suggest that Frontier should have foreseen sexual assault being a problem under the circumstances of this case. The Complaint contains no allegations to suggest that sexual assault is common on Frontier flights; that these particular routes or flight times presented an increased risk of sexual assault; that Plaintiffs were at a heightened risk of being sexually assaulted; or that these assailants fit the profile of a typical sexual-assault perpetrator. Thus, there are no allegations in the Complaint to suggest that Frontier had notice that Plaintiffs – or other similarly situated passengers – were likely to experience a sexual assault. While sexual assault generally may be a "known and growing problem," Plaintiffs' Complaint contains no allegations to suggest that Frontier should have foreseen sexual assault under the circumstances of this case.

Plaintiffs argue, however, that Judge Neureiter's foreseeability analysis "misses the forest for the trees." (Doc. # 66, p. 5). "Forseeability," they argue, "is not about specific incidents that occurred to these Plaintiffs. It is broader: the key is the foreseeability that sexual assaults would take place on Frontier flights." (Doc. # 66, p. 5). The Court finds this argument unpersuasive.

First, the Court disagrees with Plaintiffs' characterization of Judge Neureiter's conclusions. Plaintiffs contend that Judge Neureiter's interpretation of the pleading standards would essentially require them "to plead facts demonstrating Frontier should

7

have known precisely when or how the assaults would occur." (Doc. # 66, p. 7 (internal quotations omitted)). The Court does not read Judge Neureiter's recommendation as creating such a requirement. Rather, Judge Neureiter simply recognized that a generalized allegation about a "known and growing problem" does not create a duty on Frontier to prevent third-party criminal acts. This conclusion is consistent with Colorado negligence law.

Next, the Court notes that other federal courts have rejected arguments similar to the one Plaintiffs are making. In *R.M. v. American Airlines*, 338 F. Supp. 3d 1203 (D. Or. 2018), the plaintiff – a child who was sexually assaulted by another passenger on an American Airlines flight – argued that American Airlines owed a duty to prevent in-flight sexual assault. The *R.M.* plaintiff argued that the airline owed a duty to prevent the assault because the problem of in-flight sexual assault had been "widely publicized," and it was therefore foreseeable that an American Airlines passenger would, at some point, be sexually assaulted. *Id*. at 1215. The *R.M.* court rejected that argument. The court concluded that, to establish foreseeability sufficient to create a duty, the plaintiff needed to demonstrate not that sexual assault generally is likely to happen on airplanes, but that "under the circumstances presented in this case the assault was foreseeable."[2] *Id*.

---

[2] *R.M.* is also instructive because the plaintiff in that case pled more facts supporting foreseeability than Plaintiffs have pled in this case. The *R.M.* plaintiff alleged that she was an unaccompanied minor seated in the middle of the plane next to a male passenger; that the assailant had refused to move to an open seat away from the plaintiff; and the assailant had kept his tray table down after being instructed to put it up. *R.M.*, 338 F. Supp. 3d at 1215. Here, by contrast, Plaintiffs present no facts to suggest that the circumstances presented in this case made a sexual assault likely; instead, they rely entirely on generalized information about the

Further, the Court concludes that the Colorado Supreme Court would probably reach the same conclusion as the *R.M.* court, because Colorado case law aligns with the *R.M.* decision. In *Taco Bell, Inc. v. Lannon*, the Colorado Supreme Court considered whether a fast-food restaurant in a high-crime area of Denver had a duty to protect its customers from armed robbery. *Taco Bell*, 744 P.2d at 48. The court concluded that it did; however, that duty did not arise from the mere fact that armed robberies at fast-food restaurants were "widely publicized" or a "well-known, and growing, problem." Rather, it arose from the circumstances presented in that case. The *Taco Bell* court noted that there had been numerous previous armed robberies at this specific restaurant, which made armed robberies a foreseeable risk to customers at this particular location: "we conclude that the evidence of ten armed robberies *at this particular Taco Bell restaurant* in the three years prior to the incident at issue in this case sufficiently established that the harm to customers as the result of criminal acts by third persons was foreseeable." *Id*.

Plaintiffs also argue that *Axelrod v. Cinemark Holdings, Inc.*, 65 F. Supp. 3d 1093 (D. Colo. 2014), supports their argument. In that case, the plaintiff alleged that a movie theater chain was liable to the family of a victim of a mass shooting in one of its theaters. *Axelrod*, 65 F. Supp. 3d. at 1101. The defendants moved for summary judgment, arguing that the shooting "was unforeseeable as a matter of law." *Id*. at 1098. The Court denied the motion, finding that there was a "genuine dispute of fact" as to

---

likelihood of sexual assault on airplanes, rather than on the likelihood of sexual assault under the particular circumstances of this case.

whether the theater had a responsibility to prevent the incident. *Id*. at 1100. Plaintiffs argue that this case presents a similar factual question, which is for the jury to decide. The Court finds *Axelrod* to be distinguishable.

*Axelrod* involved a claim under Colorado's Premises Liability Act ("PLA"). *Id*. at 1097-98. Under the PLA, a landowner can be held liable for injuries sustained on the landowner's property if the landowner "knew or should have known" of the danger that caused the injury. *Id*. "[W]hether a landowner should have known of a particular danger," the *Axelrod* court explained, "is a question of fact, not law." *Id*. at 1098. This case, by contrast, is a negligence case. In negligence cases, the existence of a duty is a threshold question of law for the court, not a question of fact for the jury. *Ireland v. Jefferson Cty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1228 (D. Colo. 2002).

Furthermore, even if Plaintiffs had demonstrated that these assaults were foreseeable, "foreseeability alone does not establish the existence of a legal duty." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1145 (D. Colo. 2001). The Court must also consider, among other things, "the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor." *Keller*, 111 P.3d at 447. These factors militate against the finding of a duty in this case. If courts were to impose the duty Plaintiffs propose, airlines would effectively be required to surveil every passenger throughout every minute of every flight. In so doing, airlines would be obliged not only to presume that every passenger is a sexual predator, but also to treat each passenger accordingly – thus infringing on the privacy of every passenger, regardless

whether there was a factual basis for doing so. In view of these considerations, the Court concludes that Plaintiff has failed to establish the existence of a duty in this case.

2. <u>Injunctive Relief</u>

Plaintiffs next argue that Judge Neureiter erred in recommending that their claims for injunctive relief be denied. Again, the Court agrees with Judge Neureiter.

As an initial matter, "injunctive relief is not a separate cause of action; rather, it is one form of the relief for the other legal violations alleged." *Burns v. Mac*, 2014 WL 1242032, at *2, n.1 (D. Colo. Mar. 26, 2014). Thus, the Court has little difficulty concluding that Plaintiffs' "Injunctive and Equitable Relief" allegations fail to state a claim upon which relief can be granted. *See* F.R.C.P. 12(b)(6).

But even construing Plaintiff's claim as a request for a preliminary injunction – which is what the Plaintiffs appear to be asking for – the Court still concludes that Plaintiff's request must fail.

First, the Court agrees with Judge Neureiter's analysis that Plaintiffs have failed to establish that they are entitled to injunctive relief. Injunctive relief is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates it is necessary. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party seeking a preliminary injunction must show (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). A

preliminary injunction constitutes "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), which is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Plaintiff's injunction request fails at the first *Fish* factor. As discussed above, Plaintiffs have failed to demonstrate a likelihood of success on the merits of most of their claims, and only one of their claims – negligent infliction of emotional distress – has survived dismissal. Although Plaintiffs have satisfied the pleading standards with respect to that claim, Plaintiffs have not provided enough factual detail to show a "substantial" likelihood of success on that claim.

Further, the injunction Plaintiffs seek is a disfavored "mandatory" injunction. *Schrier*, 427 F.3d at 1259. Mandatory injunctions – those that would "affirmatively require[] the nonmovant to act in a particular way," rather than merely directing the nonmovant to cease doing something – are disfavored because they alter the status quo and "place the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Id*. (internal quotations omitted). "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). For the reasons described above, that Plaintiffs have failed to make the required "strong showing" that they are likely to succeed on the merits.

Moreover, even if Plaintiffs could demonstrate a substantial likelihood of success on the merits, their request would nevertheless fail at the next *Fish* factor because Plaintiffs have failed to demonstrate an imminent irreparable injury. To demonstrate irreparable injury, the plaintiff must show "that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F. 3d 1182, 1189 (10th Cir. 2003) (emphasis in original; internal quotations omitted). As Judge Neureiter observed, Plaintiffs have failed to allege that they are in imminent danger of another in-flight sexual assault on Frontier Airlines. Indeed, there is nothing in the Complaint to suggest they intend to fly Frontier ever again, let alone that the danger of being sexually assaulted on a Frontier flight is "imminent." This is equally true of the class Plaintiffs purport to represent: although Plaintiffs speculate that future sexual assaults will occur on Frontier flights, they have failed to demonstrate that "[a]ll passengers who flew on Frontier flights between December 16[,] 2017 and the present" are in imminent danger of being sexually assaulted on a Frontier flight.

Plaintiffs argue, however, that "a critical aspect . . . of the redress they seek, is ensuring that what happened to them will never [again] happen to them *or anyone else*." (Doc. # 66, p. 8 (emphasis in original)). Although this goal is altruistic, this is a court of limited jurisdiction, and the Court has authority to issue preliminary injunctions only in the narrow circumstances prescribed by law. Plaintiffs have failed show that those circumstances exist in this case, and the Court is therefore obliged to deny Plaintiffs' request for an injunction.

**B.    MOTION TO STRIKE**

Plaintiffs next challenge Judge Neureiter's recommendation that their class-action allegations be stricken.

1.    Background

Plaintiffs purport to represent a class consisting of "all passengers who flew on Frontier flights between December 16, 2017 and the present." (Doc. # 1, 53). Frontier moved to strike Plaintiffs' class-action allegations, arguing that the class definition was overbroad and the class members' claims were too dissimilar. (Doc. # 37). Judge Neureiter agreed with Frontier.

Judge Neureiter concluded that "[a] class which includes all Frontier passengers, whether they have been sexually assaulted or not . . . is wildly overbroad." (Doc. # 61, p. 54). Judge Neureiter also found that issues specific to each individual plaintiff would predominate over any questions that were common to the class: "these cases are, at core, personal injury cases," involving "questions specific to each plaintiff-passenger." (Doc. # 61, p. 58).

Plaintiffs now argue that Judge Neureiter's analysis was flawed. Though Plaintiffs concede that not all of these passengers experienced in-flight sexual assault – indeed, the parties seem to agree that the vast majority of passengers did *not* experience such an assault – they claim that class treatment is nevertheless appropriate because all passengers faced a *risk* of sexual assault "as a result of Frontier's lack of protective policies." (Doc. # 66, p. 12).

2. <u>Legal Standard</u>

A party seeking class action certification must prove: (1) the class is so numerous that joinder of its members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named representative are typical of those of the class ("typicality"); and (4) the named representative will fairly and adequately represent the class ("adequacy of representation"). F.R.C.P. 23(a); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) ("The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied.").

To prevail on a motion to strike class action allegations, the defendant must demonstrate "from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by plaintiffs regardless of the facts the plaintiffs may be able to prove." *Francis v. Mead Johnson & Co.*, 2010 WL3733023 (D. Colo., Sept. 16, 2010), at *1 (emphasis in original; internal quotations omitted). Class action allegations may also be stricken when the class definition is overbroad and includes class members regardless of whether they were ever injured. *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *6 (D. Colo. Sept. 25, 2012).

3. <u>Analysis</u>

The Court agrees with Judge Neureiter's conclusion that the class definition is overbroad. By their own admission, Plaintiffs' proposed class would include thousands of individuals who never have been, and will never be, sexually assaulted on a Frontier flight. Though Plaintiffs claim that one of their primary goals is to prevent future

assaults, many members of the proposed class – including the named Plaintiffs – may never fly Frontier again, and thus will obtain no benefit from the relief sought in this lawsuit. Indeed, the proposed class of plaintiffs includes not only sexual assault victims and potential victims, but also sexual assault perpetrators and potential assailants. Therefore, the Court agrees that the proposed class is overbroad and that class treatment is not appropriate. *See Edwards*, 2012 WL 4378219 (class treatment is not appropriate where the proposed class includes members who were never injured by defendant's conduct).

Plaintiffs argue, however that "regardless of whether *all* passengers on Frontier flights are assaulted, they are all put *at risk* of assault." (Doc. # 66, p. 13 (emphasis in original)). Therefore, they contend, all class members have a common injury and interest in this lawsuit. The Court is not convinced.

Plaintiffs claim that every single Frontier passenger – assault victims and assailants alike – experienced an actionable harm merely by taking a seat on a Frontier flight. The Court finds this claim to be implausible. A passenger's risk of sexual assault depends on a number of factors, including the passenger's age, sex, and seat location, as well as the departure time and the flight duration. To ignore these factors and treat all Frontier passengers the same would risk absurd results: an assailant who opts into the class might benefit from a class-action settlement, while a child victim who fails to opt out might be deprived of a later opportunity to vindicate his or her rights.

Plaintiffs argue, however, that this case is like *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010). *DG* involved a class-action lawsuit by a group of

Oklahoma foster children. The children sued the Oklahoma Department of Human Services (OKDHS) for, among other things, "failing to protect class members from abuse and neglect while in OKDHS custody." *Id*. at 1193. Although fewer than two percent of foster children reported experiencing abuse, *id.* at 1195, OKDHS's "agency-wide monitoring policies and practices, or lack thereof, create[d] a risk of harm shared by the entire class." *Id*. at 1196. Plaintiffs argue that "*DG* is precisely on point to the key issue here: regardless of whether *all* passengers on Frontier flights are assaulted, they are all put *at risk of* assault." (Doc. # 66, p. 13 (emphasis in original)). However, Plaintiffs' analogy is simply not applicable in this case.

*DG* involved a class of plaintiffs that was far more limited and well-defined than the class Plaintiffs seek to certify. Whereas Plaintiffs' proposed class includes both sexual assault victims and perpetrators, the *DG* class was limited to children in the Oklahoma foster care system; it did not include abusive foster parents. Further, every single member of Plaintiffs' proposed class can choose to fly with a different airline other than Frontier. By contrast, the *DG* plaintiffs were at the mercy of Oklahoma state foster care system; they could not choose another state's system. Thus, the *DG* class was more clearly and more narrowly defined to include only those individuals who faced a real, imminent threat of harm. Plaintiffs' proposed class is overly broad and, thus, not similar to the proposed *DG* class.

**C.   MOTION TO AMEND**

Finally, Plaintiffs sought leave to amend (Doc. # 65) to address the concerns identified in Judge Neureiter's first Report (Doc. # 61). Judge Neureiter concluded that

17

Plaintiffs' proposed amendments would not meaningfully address those concerns, and that amendment would therefore be futile. (Doc. # 75). Therefore, he recommended denying the Motion for Leave to Amend. Plaintiffs now object to this recommendation. (Doc. # 77).

Significantly, however, Plaintiffs largely fail to address the issue of futility. Instead, they merely rehash their arguments against dismissal and in favor of class treatment. (Doc. # 66). These arguments are not relevant to the futility issue, and they need not be considered. *See* 28 U.S.C. § 636(b)(1)(c) *and* F.R.C.P. 72(b)(2) (the parties must file specific objections to the magistrate judge's recommendations).

In the small portion of their brief that *does* address futility, Plaintiffs argue that amendment would not be futile because the proposed amendments establish the foreseeability of these assaults. Therefore, Plaintiffs argue, Frontier owed a duty to prevent the named Plaintiffs from being sexually assaulted.

The Court, however, agrees with Judge Neureiter's reasoning that the proposed amendments are not sufficient to make the assaults foreseeable such that the Court could "hold Frontier liable for the criminal conduct of third parties." (Doc. # 75, p. 9). As Judge Neureiter observed, "[t]here is no allegation that Frontier flights generally are more likely to have sexual assaults compared to other airlines," and there are "no allegations about the probability of sexual assaults occurring on an airline generally or Frontier specifically, or what percentage of the millions of Frontier passengers have been sexually assaulted." (Doc. # 75, p. 9). Thus, this Court agrees with Judge

Neureiter's conclusion that the proposed amendments are not enough to make these assaults foreseeable.

Therefore, the Court adopts Judge Neureiter's conclusion that Plaintiff's Motion to Amend should be denied because amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS and ADOPTS Judge Neureiter's recommendations (Docs. ## 61, 75).

The Motion to Dismiss (Doc. # 36) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to Plaintiffs' claims for negligence, intentional infliction of emotional distress, injunctive relief, and willful and wanton conduct, and those claims are DISMISSED. The Motion is DENIED with respect to Plaintiffs' claims for negligent infliction of emotional distress.

The Motion to Strike Class Allegations (Doc. # 37) is GRANTED and Plaintiff's class-action allegations are STRICKEN from the Complaint.

The Motion for Leave to Amend Complaint (Doc. # 65) is DENIED.

DATED: February 19, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge